THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN and SHEELAGH ODSATHER, | CASE NO. C18-0289-JCC |
| Plaintiffs, | ORDER |
| v. | |
| FAY SERVICING, LLC, | |
| Defendant. | |

This matter comes before the Court on Plaintiffs' motion for partial summary judgment (Dkt. No. 34). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I. **BACKGROUND**

In 2000, Plaintiffs Sheelagh and Steven Odsather (collectively "Plaintiffs") took out a mortgage on their house with Beneficial Financial, Inc. ("Beneficial"). (Dkt. No. 35 at 13–15.) The following year, Plaintiffs sold the house in a short sale.[1] (Dkt. No. 34-1 at 2.) As part of that transaction, Plaintiffs deeded the house to Michael Ritter and incurred a $10,000 unsecured

---

[1] A "short sale" refers to a situation in which a mortgagor sells his or her home for less than the amount due on the mortgage with the permission of the mortgagee. *Investopedia: What is a Short-Sale Property & How Does it Work?* (https://www.investopedia.com/mortgage/short-sale-property/) (last updated Dec. 16, 2016).

ORDER
C18-0289-JCC
PAGE - 1

deficiency note with Beneficial. (Dkt. No. 34-2 at 1–2.) Under the deficiency note's terms, Plaintiffs were required to pay $100 per month at an interest rate of 10%, while Beneficial agreed to "charge-off" the remainder of the mortgage balance.[2] (Dkt. No. 34-2 at 2.) Plaintiffs have continued to rent the house from Mr. Ritter. (Dkt. No. 34-1 at 2.)

Plaintiffs tried to make payments on the deficiency note, but Beneficial was unresponsive. (*Id.*) In 2002, Beneficial wrote to Plaintiffs that it considered the deficiency note "settled in full." (Dkt. No. 34-2 at 3) (original quote in all capitals). In a subsequent letter sent to Plaintiffs in 2003, Beneficial stated that all records pertaining to the original mortgage "have been lost," and that Beneficial considered the mortgage to be "now paid in full." (*Id*. at 4–5.)

On June 15, 2017, Plaintiffs received a letter from Beneficial stating that the "servicing of your mortgage loan . . . is being transferred," and that the loan would be serviced by Defendant Fay Servicing, LLC. (*Id*. at 8.) On June 21, 2017, Defendant sent Plaintiffs a letter stating that their "mortgage loan" had been sold to a new lender, and that it would be handling "the ongoing administration of your loan, including the collection of mortgage payments." (*Id*. at 6.) The letter identified the relevant loan as the unsecured deficiency note that Plaintiffs had incurred as part of the short sale. (*Id*. at 6; Dkt. No. 35-1 at 14.) In a follow-up letter dated July 10, 2017, Defendant identified itself as a debt collector, asserted that the debt had a balance of $10,000, and that payment was due as of April 24, 2014. (Dkt. No. 35-1 at 14.) The letter also stated, "if you do not notify us within thirty days after receipt of this notice that you dispute the validity of the debt or any portion thereof, the debt will be assumed to be valid by Fay Servicing." (*Id*.)

On July 18, 2017, Mr. Odsather called Defendant to dispute the loan. (Dkt. Nos. 34-1 at 3, 34-5 at 4.) Mr. Odsather spoke with a representative and explained that the loan was not a mortgage, but an unsecured deficiency note arising from the short sale of Plaintiffs' house and that Beneficial had settled the account balance. (Dkt. No. 34-5 at 4.) Defendant's representative reviewed the loan file and found the agreement between Plaintiffs and Beneficial to enter the

---

[2] The original mortgage was for $68,599.92 and to be paid by 2020. (Dkt. No. 35 at 13.)

$10,000 deficiency note and treat the remaining balance of the mortgage as an "inactive charge off." (*Id*.) A few weeks after their conversation, the representative sent an email regarding the loan's status to an account vice president, but no action was taken. (*Id*.)

Instead, Defendant sent Plaintiffs monthly account statements in July, August, and September 2017, which stated that Plaintiffs were late on their payments and directed them to make payments. (Dkt. No. 34-2 at 20–25.) Mr. Odsather again called Defendant in August and September 2017 to dispute the status of the loan. (Dkt. Nos. 34-1 at 2–3, 34-5 at 3–4.) On September 29, 2017, Mr. Odsather sent Defendant a copy of the $10,000 deficiency note, and again explained that the debt was no longer valid. (Dkt. No. 34-2 at 48.)

In October 2017, Defendant reported to the credit bureaus Transunion and Equifax that Plaintiffs' debt was for a "home loan," a "foreclosure [was] initiated," and that the $10,000 balance debt was past due and owing. (*Id*. at 59–66.) Defendant did not report that Plaintiffs had disputed the debt. (*See id.*) After reviewing their credit reports in late October 2017, Plaintiffs disputed the debt directly with Transunion and Equifax. (*Id*. at 67, 82, 90.) Both credit bureaus contacted Defendant about the dispute, who responded by making various changes to how the debt was reported. (*See id.* at 97, 102, 105.) In December 2017, Plaintiffs again disputed the debt with Transunion and Equifax, asserting that Defendant continued to inaccurately list it as a "real estate mortgage," for which a foreclosure process had started. (*Id*. at 114, 118.) After this second dispute, Defendant had the debt deleted from Plaintiffs' credit reports. (Dkt. No. 35-1 at 2.)

Plaintiffs filed this lawsuit alleging that Defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692a, 1692e, 1692f, the Washington Collection Agency Act, Revised Code of Washington § 19.16.100, and the Washington Consumer Protection Act, Revised Code of Washington § 19.86.[3] (Dkt. No. 1-3, 11–17.) In this motion for partial summary judgment, Plaintiffs ask the

---

[3] Plaintiffs initially named Transunion, Equifax, and Beneficial as Defendants, but pursuant to stipulation, the Court has dismissed each with prejudice. (*See* Dkt. Nos. 19, 25, 30.)

Court to find Defendant liable for violating a single FDCPA provision. (Dkt. No. 34 at 1.) Plaintiffs assert that Defendant violated 15 U.S.C. § 1692e(8) by failing to communicate to Transunion and Equifax that Plaintiffs disputed their debt. (*Id*. at 8.) Defendant argues that any reporting failure on its part was a bona fide error, which is exempted from liability under the FDCPA. (Dkt. No. 35 at 3.)

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). When the moving party also bears the burden of persuasion at trial, "to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008).

### B. Plaintiffs' FDCPA Claim

The FDCPA prohibits debt collectors from employing "false, deceptive, or misleading representations or means in connection with the collection of any debt."[4] 15 U.S.C. § 1692e. That section specifically prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be

---

[4] The parties do not dispute, and the Court agrees, that for purposes of the FDCPA Defendant is a debt collector, Plaintiffs are consumers, and the statute applies to Defendant's collection efforts.

false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). The Ninth Circuit has interpreted that provision to allow debtors to dispute a debt either orally or in writing. *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) ("Oral dispute of a debt precludes the debt collector from communicating the debtor's credit information to others without including the fact that the debt is in dispute." (citing 15 U.S.C. § 1692e(8)).

In this case, the evidence demonstrates that Defendant reported Plaintiffs' debt to Transunion and Equifax without reporting that the debt was disputed, despite having received both oral and written notice that Plaintiffs disputed the debt. Mr. Odsather called Defendant on July 18, August 28, and September 28, 2017 to specifically object to Defendant's characterization of the debt as a mortgage, as opposed to an unsecured deficiency note, and to dispute that the debt was still owing. (*Id.*) In its Federal Rule of Civil Procedure 30(b)(6) deposition, Defendant admitted that Mr. Odsather, in his phone calls, disputed that he and his wife still owed the debt. (Dkt. No. 34-4 at 13–14.)

Mr. Odsather followed those phone calls by writing to Defendant to again dispute the debt and stated that "[y]ou are reporting to the Credit Bureaus that I am 120 days past due on my mortgage and this needs to be taken off ASAP. It is ruining my credit!" (Dkt. No. 34-2 at 47.) The next day, Mr. Odsather sent Defendant a letter that included the deficiency note and the correspondence from Beneficial showing that Plaintiffs' loan was settled. (*Id*. at 48.)

Notwithstanding Plaintiffs' communications, Defendant reported the debt to Transunion and Equifax without mentioning that the debt was disputed. As of October 29, 2017, Plaintiffs' credit reports from both Transunion and Equifax showed that Defendant was reporting the debt as a "home loan" with a balance of $10,000, and with nothing in the remarks section showing that the debt was disputed. (*See* Dkt. No. 34-2 at 59–66.)

On November 3, 2017, Plaintiffs wrote to Transunion and Equifax to dispute the debt. (*Id*. at 67, 71.) Even after the credit bureaus reached out to Defendant about Plaintiffs' dispute—

and despite Mr. Odsather's ongoing correspondence regarding the nature of the debt—Defendant continued to report the debt as a "conventional real estate mortgage" for which "the foreclosure process" had started. (*Id*. at 97, 102, 105.) In response to these updated reports, Plaintiffs again disputed the characterization of the debt with Transunion and Equifax. (*Id*. at 114, 118.) In January 2018, Defendant finally responded by deleting the debt from Plaintiffs' credit report. (*Id*. at 123; Dkt. No. 35-1 at 2.)

Defendant asserts that, although it initially failed to report Plaintiffs' debt as disputed, its failure was the result of a bona fide error.[5] (Dkt. No. 35 at 7.) Generally speaking, the FDCPA is a strict liability statute, which does not require plaintiffs to show that a violation was either knowing or intentional. *See Clark v. Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1176 n.11 (9th Cir. 2006). However, the FDCPA provides a "narrow exception to strict liability" for bona fide errors. *Id.*; *see* 15 U.S.C. § 1692k(c). "The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008) (citation omitted). To assert the defense, the defendant must prove that "(1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).

Defendant asserts that its failure to report Plaintiffs' debt as disputed was the result of its employees failing to report Mr. Odsather's July 2017 phone call up the company's chain of command. (Dkt. No. 35 at 7.) Defendant states that it has written procedures "regarding

---

[5] Defendant also argues that because Plaintiffs failed to provide written notice disputing the debt within 30 days of receiving Defendant's collection notice, it "lacked notice of any alleged inaccuracies and properly assumed the debt to be valid." (Dkt. No. 35 at 6) (citing 15 U.S.C. §1692(g)(b)). Defendant's argument is meritless. First, the provision it cites is completely unrelated to a debt collector's obligation to communicate to credit bureaus whether a debt is disputed. 15 U.S.C. §1692e(8). Second, Defendant's position ignores that Plaintiffs verbally disputed the debt, which is sufficient to require a debt collector to comply with the requirements of 15 U.S.C. §1692e(8). *See Camacho*, 430 F.3d at 1081–82.

escalation of complaints" that, if followed, would have prevented Defendant's inaccurate reporting. (*Id.*) Defendant further asserts that its complaint reporting procedures are "reasonably adapted to avoid errors regarding failure to handle consumer complaints." (*Id.*) Defendant argues that its employees' failure to report Mr. Odsather's complaint should therefore be treated as a bona fide error. (*Id.* at 8.)

Defendant has not met its burden to show that its failure to report Plaintiffs' debt as disputed was the result of a bona fide error.[6] Regardless of whether Defendant's employees failed to follow company procedure in escalating Mr. Odsather's initial complaint in July 2017, Defendant continued to inaccurately report Plaintiffs' debt even after Mr. Odsather again disputed the debt in August, September, and October 2017. Moreover, Defendant's official procedures instruct employees to only report a dispute to a credit bureau after making "a determination as to the validity of the credit reporting." (Dkt. No. 35-1 at 59.) During its Rule 30(b)(6) deposition, Defendant suggested that although Mr. Odsather had disputed the debt as early as July 2017, the company needed to verify that dispute before reporting it to the credit bureaus. (*See* Dkt. No. 34-4 at 9) ("[Y]ou know, when you get that information from a borrower verbally, you don't immediately say, oh, this is going to be disputed. So you have to do the legwork, you have to get some backup, you have to get the documentation, and then you have to go through reviewing the information you have."). Defendant went even further, testifying that before reporting a debtor's verbal dispute, it had to ensure that the dispute was "valid." (*Id.* at 10) ("And based on verbal, you can't report that it's disputed. You have to get the information and then you have to do the research . . . that this might have been a valid dispute that we would report it as disputed.").

The evidence demonstrates that Defendant, both in policy and in practice, does not report verbal disputes to credit bureaus until it first verifies that the dispute is valid. But the FDCPA

---

[6] The Court also notes that Defendant did not assert the bona fide error defense in its answer. (*See* Dkt. No. 18.)

does not allow debt collectors to subjectively decide whether they should report that a debt is disputed—the statute makes it illegal for a debt collector to fail "to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Moreover, Defendant's assertion that a debtor's verbal dispute should be treated differently than a written dispute is in direct conflict with Ninth Circuit case law holding the opposite. *See Camacho*, 430 F.3d at 1082. For those reasons, Defendant's failure to report Plaintiffs' dispute is not a bona fide error, but the exact kind of mistaken legal interpretation that is not protected by the defense. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010) (holding that the bona fide error defense does not apply "to a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA."). Nor are Defendant's procedures regarding the reporting of verbal debt disputes "reasonably adapted" to avoid errors—if anything, they are reasonably adapted to violate the FDCPA.

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment (Dkt. No. 34) is GRANTED. The Court FINDS, as a matter of law, that Defendant violated 15 U.S.C. § 1682e(8) when it reported Plaintiffs' debt to Transunion and Equifax without including that the debt was disputed.

DATED this 20th day of December 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE